Good morning. Before we start our first argument, our first case, we have the happy privilege of moving some important people into our court family, our court bar. So I am moving my law clerks, and I'd ask that they come forward, Sarah Arrow, Angela Cai, and Katherine Calley, and Michael McDonald. And I'm moving two of my law clerks for admission, and I'll ask Jason Kleinrocks and Matthew Forbes to please come forward. Jason Kleinrocks If I might just say a couple of words about my law clerks. Sarah Arrow, she's the one, she's a couple looking out, my last one, the woman to the right. She hails from Brooklyn, that's up north in case you don't know where it is. But from Ballard College and UPenn, Katherine Calley from Connecticut, she is Harvard College, Harvard Law School. Angela Cai, a fellow Jerseyan, which is always good, is from Princeton and Yale Law School. And Michael McDonald, St. Joe's, right here in Philly, and UPenn right here in Philly. And I'm delighted to be able to move for the admission of my two fine law clerks, Jason Kleinrocks, a UPenn grad, and also clerked for Judge Jerry McHugh on the district court before going into private practice with Davis Polk, do I have that right? And now moving on with his career, and Matthew Forbes, a Stanford Law grad, who clerked for Judge Jack Kuhnheim of the District of Minnesota before coming with me. And I'm thrilled to have them become members of this bar. I think we can dispense with considering it in conference. So I move that my clerks be admitted. I second it. Okay, thank you. I move my clerks be admitted. I second that. I vote yes. Well, thank you for your service to the court, it's very important to us. And I'm sure you'll become valued members of the bar, and congratulations. If you'll stand there for a second, we'd like you to come out and shake your hands. All right, the first case we'll hear this morning is Mullen v. Borecki, number 16-2896. Good morning, your honors. Good morning. My name is Shelley Stangler. May it please the court, my name is Shelley Stangler, and I represent the appellant plaintiff, Joan Mullen, as administratrix of the estate of Robert Mullen, Jr., deceased, and Joan Mullen individually. I would like to reserve three minutes for rebuttal. That'll be great. The court would like the parties to focus on the denial of the amendment, the third So I would frame the issue as, was it an abuse of discretion to deny this amendment with the result that the blameless litigant has been denied her opportunity to have her case tried or resolved on the merits? Now, there are several levels of appellate review here. It's not just abuse of discretion. There would be plenary review for misinterpretation of the federal rules of civil procedure, in this case the concept of undue delay, and there would be a clearly erroneous standard for failure to consider the operative facts. But you would get right to the heart of the matter as far as I'm concerned. You had discovery which was very, very significant discovery in terms of the claim that you now want to present, but you sat on that discovery for about ten months before doing any of it. And it certainly took you several months before you realized that you had this very important discovery. Why did it take you so long? All right, Your Honor, I think the issue here is willful conduct, intentional conduct, dilatory conduct. I have explained in my briefs what occurred here. Well, those issues involve fault of a certain kind, but in this case you simply overlooked discovery that was important, causing an additional ten-month delay in the case. All right, let me answer that, Your Honor. First of all, if you look at the magistrate's as causing undue delay. She spoke of the tortured procedural history of the case dating back to seven or eight motions of which plaintiff had no, there was no issue of a discovery for the first two years and three months in this case when we were not given any discovery. Now, one of the issues, Your Honor, when you look at this is whether or not the plaintiff sat on her rights, because considering whether something is undue, one has to look back and see whether the plaintiff throughout the course of the litigation was sitting on her rights. And if you look at this and you look at the magistrate's opinion, again, it wasn't just that the missing discovery, which I will address, it was two and a half, almost two and a half years before the plaintiff was able to get even a scrap of discovery despite repeated attempts. So as soon as counsel, as soon as. Are you suggesting in that statement that the state attorney, the New Jersey state attorney was not giving you discovery that you were entitled to? The issue here, Your Honor, is that there was not a Rule 16 conference for almost two years into this case, and that was a problem. And one of the things that the magistrate and the district court did. That was because there was motion practice to start with, right? There was, but I did cross move, Your Honor. I did cross move immediately to amend the complaint and for discovery. I asked for discovery at least seven or eight times before I got the pieces of discovery that are leading to this problem. But it was a two and a half year process, which was not the plaintiff's fault, to get any of this discovery. Now, do you concede that the April, the July 2013 discovery was relevant, had relevant information insofar as the pending, the then pending motion to dismiss was concerned? No, Your Honor, and here's why. All right. Now, and we could talk about Bell, Atlantic, and all of the standards for pleadings, but I pled in the second amended complaint that Officer Dimler, by policy, was required to monitor and supervise the young man who committed suicide, that he was required by policy and procedure to give him supervision on a constant basis, and that was in the second amended complaint. I think it's paragraph 60 or 61 in my second amended complaint. Now, I don't think that the law requires you to actually state, well, it was policy, M-E-D-Q-R-S, little I-2, in your complaint. It is sufficient to allege that the policy demanded that there be one-on-one and constant observation, and there was not, and I absolutely pled that. So, Your Honor, when I got that July discovery, which did not put all of the pieces of the puzzle together, and the July discovery did not have that Mullen was a special needs inmate, that he was on a special needs roster, that he was screaming for help, and it was denied, none of that was in that discovery. The July discovery merely consisted of policies and procedures, which I did show to the judge to suggest that my original complaint was not conclusory, but I don't think the law requires you to actually put the actual policies, and I cited some cases for that in my brief. So, no, the July discovery was interesting, and I did comment in my brief on reconsideration of the dismissal, that it awaited further discovery, and the magistrate chided me for that, but yes, once I had the policies... But, Your Honor, there's already a judgment, and then you sort of change the playing field, at least that's what the opinions would say, right? It wasn't until you already had a judgment against you, you said, oh yeah, I got some new stuff, and you know, and apparently that's what, it looks like that's the problem the judges below had, that you keep, you continue to change the parties of the playing field, meaning that everybody has to go back to square one, and I'm quoting the district court. Well, I think that takes us to what happened with this April discovery, and to answer Judge Fuente's question, in terms of sitting on one's rights, I filed motions to amend them for discovery at every turn. I sent letters requesting discovery in February of 2012, in connection with a motion to file a late notice of claim. I also requested discovery. Discovery was denied, and if you look at the case law, especially in terms of relation back, the three significant published opinions, all of the plaintiffs were given the right to have discovery so they could flesh out those issues. I kept writing the court in motions, two cross motions to amend... I understand what you're saying there, but you had this discovery in April of 2013, long before the motion to dismiss was decided. Well, my position is, Your Honor, I did not have it. It was produced, you didn't realize it. Yes, okay, that's not willful, and that is not the same thing as having it. Now, would it have been easier, I am an officer of the court, and I think I put in my reply brief, would it have been easier for me to say, oh, I never got it? I guess I could have said that. Well, that would be lying. You're an officer of the court. A hundred percent, Your Honor, and that's why I did not. All right, and we searched through our files, and we found it, but what we have here is inadvertent clerical error. You have a paralegal with nine years' experience. She says there's discovery in the Mullen case. I said, fine, give me the discovery. I get the pile of material. I reviewed it, and I did not realize, for several reasons, that there was a missing disk in another file. You had taken depositions before that, hadn't you? No. No depositions at all? No, Your Honor. Again, discovery was completely denied, and there were no depositions. The only deposition that was taken... Did you ask for depositions? Did you serve notice of depositions? The court had denied my discovery at the conference in February. There was a conference February 23, 2012, in which the court said, we are going to await, not only was it stated at the conference, and you can see in the docket that discovery was discussed, not only did she say that we're not going to have any discovery, we're going to foreclose discovery until we hear the motions, but she also said on my two cross motions to amend to identify all of the defendants... Could you help me just understand the nature of your case? I mean, were it to go forward, you have this information concerning Officer Russo, which I suppose is your strongest position in the case. You have Officer Dimler that you try to get back in the case. Is that accurate so far? Yes, yes. And is there anyone else that you're interested in were this case to go forward? Well, I did bring in the supervisory people. I brought in a chief, a lieutenant, and two sergeants who were all there at the time and were all responsible for the supervision of Officer Russo. Okay. No, no, no. The newly identified defendants that came out of that missing discovery... State defendants. The state defendants were administrators, the chief administrators. They were dismissed and I'm not appealing their dismissal. Is Nurse Bird necessary in this case? No, and I'm not appealing the dismissal again. I'm not... Officer Dimler? Yes. I am here regarding Officer Dimler, who we have an inmate stating didn't conduct any of his watches or rounds and he was the person who was immediately responsible on the third shift. And I am also seeking to implead in the third amended complaint Officer Russo, who heard Mr. Mullen crying for help and actually saying he was going to kill himself, to which Officer Russo said, go ahead and kill yourself, and then he did. So we really are looking at egregious facts. Your Honor, let me put it to you this way. I don't think there is a firm in this country, from a solo practitioner to a firm with a thousand lawyers, who has never lost a document, who has never lost a piece of paper or a file. This was completely inadvertent. I asked for the discovery from my paralegal. I got it. This is not undue. There was already, in terms of undue, prejudice and sitting on your rights. Even if, in the perfect world, if I had had that disk, I would still have had to have filed a motion to amend the complaint, which would still have been opposed, and we would have been three years out, even if everything had been handled, even if I had had that discovery. I'm looking at the magistrate judge's opinion on denying the motion for leave to amend, and the magistrate judge says there was a conference conducted on November 26, 2012, at which the court set a schedule for fact and expert discovery, as well as dispositive motions and amendments to pleadings, and then there was, fact discovery was to be completed by May 17, 2013. That deadline was extended to July 31. The court expressly denied leave to extend the time to amend, because there had already been a number of amendments, and the court said during calls conducted on June 18 and September 24 and November 18, 2013, the magistrate judge urged counsel to proceed with discovery, and you're saying you weren't reconciling those two statements. The Rule 16 conference was not held until two years after the complaint was filed, and it was not held until there were already several motions, about seven motions, that I kept having to fight back without any discovery. There were two initial motions to dismiss the complaint in 2011. I immediately cross-moved to amend, and to ask for discovery identifying the supervisors, the defendants, and everyone who was responsible in this case. That was denied. Now, what's interesting here is that both the magistrate and the federal judge stated that although discovery might help us determine, you know, what Officer Dimmel's responsibility is, we're going to deny it. And that, I believe, was in the November 28, 2011, order of Judge Goodman. All right. So I had two cross-motions to amend in 2011. Would you like me to continue, Your Honors? I see that my time is up. Actually, Judge Fuentes had a question. I was interested, were this case to go forward, what would happen next in this case? I would go back, and I would, well, that depends on Your Honors, because I believe Your Honors would have the ability to order that the amended complaint be filed, and then we would just continue with discovery. Your Honor, there were no depositions. There is no prejudice. This complaint was filed in 2011? Yes, Your Honor, but again, three years of this had nothing to do, or two and a half years had nothing to do with any of their elections on the part of plaintiff. And I would note, and I also put this in my brief, in terms of conduct during litigation, when I was aware of something, I took immediate action. When I got records from KENTOC, it was in July of 2012, I believe, the day after I made a motion to amend. When I got motions to dismiss, I cross-moved to amend. Every single time that I was supposed to take action, I did take action. Do you have any case law that directly, I mean, other than focusing on excusable neglect, do you have any case law that supports the continuation of this case, under the circumstances that have been presented by the Memphis Sheriff's Office? I think if you look at Arthur V. Mask, that case discusses the Siemens case. That case does discuss Did you mean Mask? Mask, I'm sorry, Your Honor, yes. I pronounced it incorrectly. But there was a discussion there about excusable neglect. Circumstances involving a ten-month delay? Well, if we also look at the Curitin case and all of the cases that were cited by the magistrate and defense counsel, appellee, they all, some of them involved years, but the key to those cases is that there was full discovery before the plaintiff was able or attempted to amend. In Curitin, you have summary judgment going in front of the Court of Appeals, getting going back on remand, summary judgment again, full-fledged discovery, and then they decide to amend the complaint. In Zenith, the United States Supreme Court case in the early 1970s, the plaintiff tried to amend the complaint a year after a trial. These facts just don't fit into that model of that kind of undue delay. Curitin, Lorenz, all of these cases say the mere passage of time by itself is not sufficient. The question is, is the delay undue? Thank you, Mr. Harris. So can I just ask you one other thing? So following your argument all the way through, because if we write on this, we'll have to decide it, is the rule here that error by counsel has no consequence? No, Your Honor, that is not what I'm saying. What would the consequence be here? You're just looking for us to send it back and move forward. No, I am not, Your Honor. I am pointing Your Honor's direction to all of the cases in which amendments were denied, and I am suggesting to the court that the misfeasance or the failure to have had this discovery available does not fit into those categories of those cases. In all of those cases, there's the skiing case at my adversary's side of the Bajor case. I'm sure I'm pronouncing it incorrectly. But in that case, they knew for three years that they should have been amending the complaint. Here I did not recognize that, and the moment I did, I wrote the court. So I do think that in this particular case, compared to all of the cases that we have that deny discovery, that the loss of this particular disk at that moment doesn't rise to the level of undueness because there's no prejudice, which is the touchstone of denial. Number one, there's no prejudice. And number two, plaintiff did not sit on her opportunities to cross-move and make arguments and try to get to discovery throughout the litigation. I'd like to hear that regarding no prejudice, but maybe when you come back. Thank you, Your Honor. Thank you, counsel. We have the appellee. Good morning. Good morning. My name is Gregory Bueno, and I represent the appellee, Officer Nicholas Dimmler. Your Honors, when Judge Goodman said that this case had a very long and tortured procedural history, she was absolutely 100% correct. And this long and tortured procedural history is the result of plaintiffs' repeated failures to file a complaint that pleaded a plausible cause of action against Officer Dimmler. And that failure to do so has absolutely caused Officer Dimmler to suffer undue prejudice. These repeated failures, they form the common thread in this case. This thread is what led to one critical decision by the district court, which the court has asked me to address today, and that's the December 2014 decision denying plaintiffs a motion for leave to amend a complaint for the reason of undue delay. Your Honors, the opinion granted in the motion today is this, which was decided on November 1, 2013. It provided a roadmap for how plaintiffs would have to raise a cause of action. It identified the deficiencies in it. If I could just ask you a question, and sort of taking from where your adversary left off, are there any cases that affirm denial of leave to amend where the delay was caused by an unintentional error on part of the movement, like in this case? I'm not aware of any cases that state that in this particular circuit, Your Honor. Do you have any reason to doubt Mr. Dimmler's position that this was inadvertent? I have no reason to doubt that it was inadvertent, Your Honor, but that doesn't change the fact that the failure occurred, and that that failure, in fact, prejudiced Officer Dimmler's ability to prosecute his case here. How so? How was prejudice felt here? Well, we have to look back at the, again, it all comes back to the extensive procedural history in this case. We're talking about multiple motions to amend, multiple motions for reconsideration, which the magistrate judge stated was procedurally inappropriate, and the magistrate judge instructed counsel that if she wanted to amend a complaint, and this was in the vote of 2013. Well, I don't know whether she said it was inappropriate. I think she seemed to be venting a little frustration that there's a lot of work here, but I don't know about inappropriate. Well, in any event, the magistrate did instruct counsel to file a motion for leave to amend if she actually wanted to amend the complaint, and that was in November of 2013. However, no motion to amend followed until August of 2014. And, again, if we go back to the issue of when discovery was produced, okay, we have this one set of discovery that was produced in April of 2013 that she wasn't aware of, but there was also discovery that was produced in July of 2013, which she was aware of, and she did not reopen the motion to amend, motion to dismiss, excuse me, until after an adverse decision was filed. And if we look at Hurton v. NCAA, that case states that when a motion to amend is brought after an adverse decision, the interests against granting that motion become particularly compelling. I don't remember what you said to the judge when you asked his question about what is the direct prejudice to Dimmler? Yes, we got off track. The direct prejudice has been, once again, the filing of these multiple motions to dismiss because the complaints that were filed in the complaint were they simply did not raise a plausible cause of action. How is he hurt? How is he harmed? What is the prejudice to him? Well, the prejudice personally to him is He has good counsel, I assume, state of New Jersey. Right. Well, the prejudice to Officer Dimmler in particular is that at this point in time, it's been eight and a half years since Robert Mullen committed suicide. So with the passage of time and with the fact that some of these witnesses in the prison that may eventually form Ms. Stangler's case, we don't know where they are. It's been eight years. They could be in other facilities. They could be out. They could have been transferred out of state because they were causing trouble. All these things could have come into play here. Is this in your brief? I'm sorry? Is this in your brief? This element of prejudice? Well, I discuss the element of prejudice, not these particular facts, but the issue of undue prejudice is discussed in the brief, and I rely upon the magistrate's discussion about how all this work had already been done on this case. As Judge Fuentes points out, you're talking about cost and time, we get that, but it doesn't seem that there's any alleged prejudice to Dimmler's ability to defend himself. Again, with the passage of time, even if we're not saying eight and a half years, even if we're going back to the time that the motion to amend was filed back in December of 2014, that's still over five years after, and the only thing that had been happening in the intervening time was litigating the pleadings, which once again, despite multiple attempts by plaintiff's counsel to get it right, it just never happened. I mean, the second amendment complaint that counsel refers to is not actually the second proposed pleading that was submitted out to the docket. It might have been the fifth or the sixth, so we have this ongoing pattern here. Our focus is her current effort to amend the complaint to include Officer Russo. Isn't that accurate? That's what she is trying to do, yes, in addition to a number of other defendants. They're Jancic, Dudich, Stern, Spence, and Larson. I'm focusing on Officer Russo for a moment, and also the comments that were made by six prisoners who overheard the defendant Mullen, I'm sorry, the plaintiff Mullen, ask for psychiatric help. Six different prisoners said that. Three prisoners heard Officer Russo say, well, you might as well kill yourself. That's the essence of the status of Ms. Stangler's claim here and why she wants to amend the complaint. And I understand the court's function is weighing equities. What's fair? Given the strength of that evidence and assuming that it's true for purposes of the motion, why shouldn't she prevail? Why shouldn't Mullen get a chance to present that case in court to a jury? Your Honors, I respectfully submit that any issue that is brought up in this case regarding discovery, timing of discovery, amount of discovery, whether that discovery supports a cause of action or not, frankly, these are all red herrings by plaintiff's counsel. I'm sorry, what's a red herring? What Officer Russo said? In a way, yes, any discussion involving discovery because, frankly, you do not need discovery to state a plausible cause of action from the very outset of a case. Complaints are filed in district courts every single day without the benefit of pre-litigation discovery or any sort of discovery. So if you look at the case law on holding officials liable for inmate suicide and you get a bare minimum of relevant information, you should have enough to at least state a plausible cause of action from the outset. You don't need the benefit of discovery. It's different, for instance, if we were talking about the en masse. The fact pattern that I gave you before, why isn't that a plausible cause of action? It's a civil rights case. I mean, I don't want to comment on whether it's going to be a plausible cause of action or not, Your Honor. That may be true. I mean, there may be a total failure to prove it, but the point is at this juncture of the proceedings, why don't we accept the allegations as true for purposes of determining whether Mullen should be given the opportunity to go forward? Well, because at least as far as the district court is concerned, Your Honor, they were not under any obligation under Rule 15 to look at the sufficiency of the complaints. I mean, we opposed the amendment based on undue delay. And if we move on based on undue delay, they don't have to consider whether the pleading is futile or not. It's just a matter of timing. But at the same time, it's our position that the fact that this case was started in 2011 and that there were attempts to bring Oster Dimler into this case as early as the summer of 2011 and they weren't successfully brought in, that that just adds to the delay. Was the plaintiff precluded from taking depositions during the discovery period? The plaintiff was not precluded from taking depositions. Did the plaintiff serve any deposition notices? I've reviewed the record inside and out, Your Honor. I never saw any deposition notices. And I don't believe that Ms. Stenger actually served any such notices. I was going to just ask you on futility. I noticed there doesn't seem to be any findings on futility. If we disagree with you, do we have to remand for showing or for some analysis on futility? If we disagree with you, what your argument is today? Well, no, because the standard here is whether there was an abuse of discretion, which is defined as an errant conclusion of law. If we agree that there was an abuse of discretion, at least insofar as what the district court did, would we have to send it back for the court to make findings as to futility? That's a good question, Your Honor. I still maintain that the answer is no, just because the prior decision was based on the failure to timely submit that motion. Let me ask you a related question. If we were to disagree with your position and find an abuse of discretion on the question of undue delay, there was not undue delay, do we have to ask the district judge to decide in the first instance the relation back question with respect to all these new defendants that plaintiff seeks to add? That is, does the amendment relate back to the filing of the original complaint with respect to these new parties? Well, the judge did make a finding as to relation back and found that there was no relation back because you couldn't establish beyond submitting speculation that there was either an identity of attorney or identity of interest in terms of who these new potential defendants are and their relationship with the officer. If the new defendants were in, just to follow up, the state attorney would represent them, wouldn't they? Not necessarily, Your Honor. They're public employees. They're serving their capacity as public employees. That may be the case, Your Honor. You wouldn't represent them? Well, more often than not, the answer would be yes. However, there's still a process by which a public employee must request representation. Let's assume they want the attorney general to represent them. You wouldn't say no. It depends on their conduct. We have to do an investigation into their conduct. If there was some sort of intentional or willful misconduct of any kind, then, and again, frankly, these decisions are well above my pay grade, but the general. Let me just probe a little bit deeper. Are these claims in their personal capacities or official capacities? Well, they would not survive if they were in their official capacities, Your Honor, if you're talking about a 1983 claim. So what you're saying is they could get private counsel to represent their private interests. They could get private counsel to represent their interests, and there have been numerous cases that my office has handled where that's exactly been the case, where we've represented certain defendants who are either current or former public employees, and at the same time there may be other defendants who are also current or former public employees who have retained private counsel. And, again, the point is that the attorney general's office has the discretion to grant or deny representation. And, again, plaintiff's counsel did not submit anything beyond rank speculation, frankly, that these new defendants weren't aware of the suit. And there's the Bechtel case, which we cited too in our brief, which states that it's not enough for the plaintiff's attorney to show that the new potential defendants are aware of the underlying facts that gave rise to a lawsuit. They must actually be aware of the suit itself. There's nothing in any of a plaintiff's motion papers in support of her motion to amend which adequately support that position. Are you able to say, I don't know whether this is within your pay grade, but are you able to say whether you now represent any of those six people? We do not, Your Honor. Okay. We have not received representation requests from any of these individuals. No indication whatsoever that they are aware. Sorry, Your Honor. Is Russo aware that there is an application to bring him into the case? I'm not aware of what Officer Russo is aware of as far as the status of this case. But I submit that it's plaintiff's counsel's. The motion we're looking at is a motion to amend the complaint to add additional parties. So that hasn't been done yet. So he probably would not have been served yet with any papers. Correct. And the service of process would only follow after the filing of the complaint, which has not been done here. Can I ask you a broad question? In our circuit, there's a case of Fletcher v. Harley. And we held that civil rights cases like this one, district courts must offer leave to amend after a motion to dismiss unless the amendment would be inequitable or futile. Can you state that the amendment in this case would be inequitable or futile? It would be inequitable. Inequitable is unfair. Yes. Unfair to the state. It would be unfair to Officer Dimler, yes. But fairness has to be considered both ways, doesn't it? Would it be fair to the defendant? Yes. Fairness does have to go both ways, Your Honor. Equity is a process of balancing factors on both sides. Yes. And you said before that the discovery lapse on the part of the plaintiff, you cannot say that that was advertent. You accept that it was inadvertent. It was inadvertent, but the effect of the prejudicial effect is still the same. Whether plaintiff's counsel intentionally lost something or whether she lost something or whether she intentionally concealed that she had it ultimately doesn't make a difference, Your Honor. The prejudice is still the same. It's still multiple years of arguing over the pleadings when, quite frankly, plaintiff's counsel had sufficient information to state a cause of action quite early on. Anything else, counsel? Unless there are any further questions, I will yield the rest of my time. Thank you, counsel. Thank you. Let me ask you one thing. So if this case were to proceed, you're not sure whether the state would represent the state defendants? Again, we would have to conduct an investigation into their conduct. But you would respond to the state claims, the claims against the state. Well, I don't believe that plaintiff's counsel is trying to amend a complaint to add the state itself or a state entity, but if that were the case. How about the state causes of action? The state causes of action, it's the same. It doesn't matter whether you're talking about civil rights claims or state claims. It's representation in litigation, broadly speaking. Thank you, Mr. Blumenthal. Thank you. All right, Your Honor, there are a few things here that need to be addressed. First of all, my adversary says that you don't need discovery in a civil rights case to flesh out the pleadings or to file a viable complaint. That is not the case law. Under Friedman and under Colburn I, we have a dead plaintiff here. He had no ability to say anything. The mother didn't know anything. In fact, in our appendix, the mother, I have submitted the mother's affidavits, on the initial motion to file a late notice of claim, in which from the day after he died, this mother was trying to get information and couldn't get any information. So you have the Friedman and Colburn case, and I think the recent case of Palakovic. I'm going to read from Friedman. Lack of factual specificity that is fairly attributable to the defendant's control of the information should allow discovery to proceed in a civil rights case, especially one of this nature. And again, again, plaintiff did cross move for discovery on these issues immediately, as soon as the defendant filed their first motion to dismiss. All right, so that's issue number one. Now on... You were allowed, I'm really having trouble here, you were allowed discovery. You received discovery. Yes, let me answer that question, Your Honor. All right, again, you did not receive any discovery until after two years of litigation. All right, I would like to correct my adversary's statement that all of these motions and this implication that somehow everything was inappropriate. That is absolutely incorrect. All right, let's go through this discovery situation again. I file a complaint. There's an immediate motion to dismiss by the state. I make a cross motion to amend and for discovery saying, I don't know who the responsible parties are. I'm doing the best I can with this complaint based on some limited medical records, but I need discovery. So, Your Honor, I asked for that immediately in 2011. Then there was another state defendant, Trenton. I cross moved to amend. I need discovery. All right, the court denied it. I was... But you had discovery by April of 2013. All right, I also had... Okay, well, that gets back to whether it was inadvertent or not. Now, I would also note that when the defendants filed their answers to interrogatories, because you asked about discovery, and that was already in May or June of 2013, their answers, and it's all in the appendix, the state administrator said, well, we're not employed here anymore, so we can't even answer any questions. So everything was no, no, no, I can't answer the questions, and you can find that in my appendix. And with respect to Officer Dimmler, when my interrogatories asked him, who were the supervising officers, who were your supervisors, and who was involved in the transfer, the housing, and who was involved in this, he said in his answers to interrogatories in June of 2013, I can't answer that question. When they had all of this material. I'm still trying to find a connection between Dimmler and the causality here. I mean, Dimmler was just doing spot checking, apparently spot checking the cells. No. Dimmler was the supervising officer who was responsible for the 15-minute checks. I mean, our position in the Third Amendment complaint is that he was entitled to constant observation. But the policy required that Dimmler have 15-minute checks, and there is one inmate who says that Dimmler didn't make any of those rounds, that he saw him once at the beginning, and he didn't see him until Mr. Mullen had committed suicide. So Dimmler did not do any of his rounds. It's also our position with respect to Officer Dimmler that Mr. Mullen was put on a special needs roster. This is similar to the Polakovic case that the court recently ruled on. He was put on a special needs roster. He required constant supervision under the policies, and Officer Dimmler did not provide that. That's a ministerial duty, by the way, under Title 59. That's not a discretionary decision. He had an absolute obligation to monitor him on close or constant observation. He did not do so. That was the approximate cause of his death. Certainly. Your time is up. I'll give you a couple of seconds to wrap it up if you want, but your time is up. All right. I would say that in terms of the relation back, which is very important, first of all, Dimmler has been in this case until 2011. In terms of the shared attorney theory, I would ask the courts to look at their footnote in the Garvin case. One more second, Your Honors. The three cases, the three published cases on relation back, which is Garvin, Singletary, and Varlock, all of them permitted plaintiff, if plaintiff had full discovery, to flesh out the very fact-sensitive issues that we have here on relation back in terms of what these defendants knew and when they knew it. So those plaintiffs had those opportunities in every single one of your published cases. So at a minimum, I should be entitled to discovery on those issues. And lastly, Your Honor, to address your issue about what do we do when plaintiff's counsel, you know, commits this type of an error, there are lesser sanctions in throwing out the case. You can look at the Poulos case and some of the other cases where attorneys are neglectful. There are sanctions. There are other ways, you know, do I think that plaintiff's counsel should be sanctioned? No, but I would say that it would be preferable to throwing the case out. All right. Well, thank you, counsel. We appreciate your argument. And both counsel, thank you for your briefing and your argument. And if you're amenable, we'd like to just greet you at sidebar and thank you in a more personal way. Thank you so much. Thank you so much. Thank you. Thank you so much. Good job. Please rise. This court is now in recess until 11 p.m.